No. 91-627

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

---

IN RE THE MARRIAGE OF
J. SPENCER WEED, III,

        Petitioner and Respondent,

   and

KAREN M. WEED,

        Respondent and Appellant.

---

APPEAL FROM:   District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C. B. McNeil, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

           James P. O'Brien, O'Brien Law Office, Missoula,
           Montana

       For Respondent:

           Keith W. McCurdy, McCurdy Law Firm, Polson,
           Montana

---

FILED

AUG 6 - 1992

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  May 21, 1992

Decided:  August 6, 1992

---

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant Karen M. Weed appeals from a decree of dissolution entered in the Twentieth Judicial District Court, Lake County.

We affirm in part and reverse in part.

The issues raised by appellant for our consideration are as follows:

1. Did the District Court err in its computation of child support?

2. Did the District Court err in the division of the marital estate?

3. Did the District Court err in the award of maintenance to appellant?

The parties were originally married in 1969. Prior to the marriage, the parties entered into an antenuptial agreement. The marriage ended in dissolution on December 11, 1972. The parties remarried on March 23, 1973, and entered into a second antenuptial agreement. Both antenuptial agreements were essentially the same. Two children were born during the second marriage--Barbara, age 15, and Douglas, age 7.

Respondent J. Spencer Weed began his own cattle ranch in 1967 which he expanded to approximately 2800 acres prior to the parties' second marriage. The ranch is currently being leased to two individuals. The income from the leases amounts to approximately $12,000 annually. In addition to the ranch, Spencer's property consists of a savings account, a gun collection, and miscellaneous property. Finally, Spencer is a contingent beneficiary of two

2

trusts. The current value of the 1923 trust is approximately $1.3 million, while the 1929 trust is valued at about $1.4 million. Currently, his 83-year-old mother is the beneficiary of these trusts.

At the time of trial, Karen was 41 years old and Spencer was 51. Spencer is in general good health, but does suffer from alcohol abuse and is hearing impaired. Karen suffers from chronic low back pain and respiratory infections. The parties' oldest child has a form of epilepsy which requires constant medication and monitoring by a neurologist. Both parties are capable of working at minimum wage level jobs, but are unemployed and Karen is currently receiving monthly AFDC benefits in the amount of $390. It is unclear from the record whether the parties' daughter is receiving state medical assistance.

On March 15, 1990, Spencer filed a petition for dissolution. Pursuant to a motion, the court granted partial summary judgment relating to the disposition of the marital estate. The court ruled that pursuant to the 1973 antenuptial agreement the parties were to retain their own real and personal property owned prior to the second marriage. In effect, this order barred Karen from asserting any claim to the ranch and the two trusts. Karen does not challenge the validity of the order in her appeal.

On September 23, 1991, the District Court conducted a hearing concerning the distribution of the remaining marital estate, child custody and support, and maintenance. On November 14, 1991, the

court issued its findings of fact and conclusions of law and decree. It is from this order that Karen appeals.

I.

Did the District Court err in its computation of child support?

In its findings of fact, the court ruled that both Karen and Spencer were capable of minimum wage employment. In the child support guidelines work sheet, the District Court imputed to Karen a yearly minimum wage of $8840, based on its finding that she was capable of minimum wage employment. The court imputed a yearly wage of $12,116 to Spencer, based on his income derived from the ranch leases. Unlike its treatment of Karen, the court did not impute income from minimum wage to Spencer and offers no explanation for the disparate approach. Based on these figures, the District Court ordered that Spencer pay $247.25 per month in child support for both children and ordered that both Spencer and Karen share equally in the health expenses of the children.

Our standard of review in reviewing child support is that a presumption exists in favor of the district court determination, and this court will reverse the district court only if it has abused its discretion. In re Marriage of Sacry (Mont. 1992), ___ P.2d ___, 49 St. Rep. 452.

Section 40-4-204(3)(a), MCA, provides that:

> Whenever a court issues . . . an order concerning child support, the court shall determine the child support obligation by applying the standards in this section and the uniform child support guidelines adopted by the department of social and rehabilitative services

4

. . . unless the court finds by clear and convincing evidence that the application of the standards and guidelines is unjust to the child or to any of the parties or is inappropriate in that particular case.

Section 46.30.1513(1)(a), A.R.M., of the guidelines defines gross income for child support as:

[I]ncome from any source, except as excluded below, and includes but is not limited to income from salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, worker's compensation benefits, unemployment benefits, gifts and prizes and alimony or spousal maintenance.

Section 46.30.1513(1)(b), A.R.M., defines "imputed income" as income from a parent who is either voluntarily unemployed or underemployed, and that income may be imputed to the parent based on the parent's ability or capacity to earn net income.

Because of the guidelines definition of gross income and imputed income, Spencer's income derived from leasing his ranch was was appropriately considered by the court as gross income for the purposes of calculating child support. In addition, while the District Court concluded that Spencer was capable of minimum wage employment, it failed to offer any explanation as to why it did not impute this income to Spencer for child support purposes while at the same time imputing the income to Karen. Because the court found that Spencer was capable of minimum wage employment, we hold that the court should have imputed this income for calculating child support. See generally, In re Marriage of Chivaro (1991), 247 Mont. 185, 805 P.2d 575. We hold that the District Court

5

abused its discretion in not imputing to Spencer a yearly minimum wage for the purpose of calculating child support.

Karen also contends that the District Court abused its discretion in directing that the parties share equally in the health expenses of the children because it did not consider the children's extraordinary medical expenses. The parties' oldest child suffers from a form of epilepsy which requires constant medication and specialized monitoring. Karen is receiving AFDC benefits in the amount of $390 a month, as well as tapping into the oldest child's savings account for income.

The child support guidelines delineate how a district court should proceed for extraordinary medical expenses which are likely to recur on a periodic basis. The expense should be prorated between the parents and added to supplement the child support obligation. Section 46.30.1525(c), A.R.M. Determining the amount to be paid can be accomplished by adding a monthly average of past expenses if future costs are comparable. Section 46.30.1525(c)(i), A.R.M.

The District Court did not make any finding regarding the oldest child's medical condition or the extraordinary medical expenses that will probably be incurred in the future. We hold that the District Court abused its discretion and erred in the calculation of child support.

II.

Did the District Court err in the division of the marital estate?

6

Recently we have clarified our standard of review regarding the distribution of the marital estate. Our standard of review in the division of marital property is whether the district court's division of the marital estate is clearly erroneous. Sacry, 49 St. Rep. 452.

In granting Spencer's motion for partial summary judgment on the question of the validity of the 1973 antenuptial agreement, the court awarded the parties their own real and personal property acquired prior to the marriage. The effect of this order allowed Spencer to retain his 2800 acre ranch. The court determined in the decree that the value of the parties' marital estate amounted to $36,669, which consisted of an extensive list of personal property. Spencer submitted a list of property that was to be divided by the parties. The record reflects that in response to the court's February 13, 1991, order, Karen's list of proposed property distribution, with some minor exceptions, is similar to the court's distribution of the marital estate.

Karen also contends that the District Court failed to consider Spencer's expectation as a contingent remainderman in an inheritance when determining the division of the marital estate. Generally, under § 40-4-202(1), MCA, the court must consider future acquisition of assets in proceedings to divide marital property following dissolution of marriage, and failure to so may result in error. In re Marriage of Alt (1985), 218 Mont. 327, 708 P.2d 258. Under the facts of this case, the court ruled that the 1923 and 1929 trusts were premarital property and were governed by the terms

7

of the court's partial summary judgment order, and thus excluded as a marital asset. In addition, Spencer does not have a present vested interest in the trusts and will not have an interest in the trusts unless he survives his mother. If he should die before his mother, then the benefits of the trust will pass on to the two children. We hold that the division of the marital estate was supported by substantial evidence and that the District Court did not err in the division of the marital estate.

### III.

Did the District Court err in the award of maintenance to appellant?

Recently we have stated that our standard of review in maintenance award cases is whether the district court's findings of fact are clearly erroneous. In re Marriage of Eschenbacher and Crepeau (Mont. 1992), ___ P.2d ___, 49 St. Rep. 393. A district court may award maintenance after the marital property has been equitably divided pursuant to § 40-4-202, MCA, and the court has properly applied the criteria of § 40-4-203, MCA.

In this instance, Karen requested a monthly maintenance award of $200. The District Court divided the only cash asset available to the parties and awarded Karen a $13,519.35 lump sum maintenance payment. This amounts to $200 a month for five and one-half years. The court considered the ability of Spencer to meet his own needs while meeting the needs of Karen. Spencer is currently unemployed and receives approximately $1000 a month from leasing his ranch and

8

has been awarded the marital debt. We hold that the District Court did not err in granting Karen a lump sum maintenance award.

We remand this matter to the District Court for further proceedings in accordance with this opinion.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

9

August 6, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

James P. O'Brien
O'BRIEN LAW OFFICE, P.C.
207 East Main Street, Suite 200
Missoula, MT 59802

KEITH W. McCURDY
Attorney at Law
P.O. Box 1172
Polson, MT 59860

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy